IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

```
                             *
KYM HENLEY,
                             *
      Plaintiff,
                             *      CIVIL NO.: WDQ-06-0299
v.
                             *
MICHAEL CHERTOFF, SECRETARY
U.S. DEPARTMENT OF HOMELAND  *
SECURITY,
                             *
      Defendants.
                             *
```

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

MEMORANDUM OPINION

Kym Henley has sued the Department of Homeland Security
("DHS") for racial and gender discrimination in violation of
Title VII of the the Civil Rights Acts of 1964 and 1991, 42
U.S.C. § 2000e-16 et seq.  Pending is DHS's motion to dismiss or
for summary judgment.  For the reasons discussed below the motion
to dismiss will be granted.

I.   Background

On November 3, 2002, the Transportation Security
Administration ("TSA") hired Henley, an African-American female,
as a Screening Manager.  Mem. Opp. Mot. Ex. 1 at 7 (Deposition of
Kym Henley).  Henley worked at BWI Airport.

On March 21, 2003, Henley arrived at BWI at approximately
3:15 a.m. for her shift that began at 3:30 a.m.  *Id*. at 105.  She

1

had brought a grapefruit for lunch and intended to cut it with a paring knife she brought from home. *Id*. at 22-24. Although she intended to cut the grapefruit in her car, she became concerned when she noticed that a co-worker had left his car-door open and his lights on; she called his cell-phone and discovered that he was safe. *Id*. at 176-77. In her haste, she forgot about the paring knife and went to work. *Id*. at 178. At the entrance checkpoint the knife was discovered by John Edmead, a security screener, who allowed Henley, his supervisor, to enter and place the knife and her lunch, in a security cabinet. *Id*. at 107-08.

At 10:00 a.m. Henley retrieved her lunch and knife and went to eat within the checkpoint. *Id*. at 111, 113. While eating, she learned of an emergency; in response, she packed up and again had the knife at a security checkpoint where screener Jerard Shird discovered it. *Id*. at 113, 120. Henley and Shird summoned a supervisor, Brigatta Brady, to help with the situation; ultimately, Brady took control of the knife. *Id*. at 116-18.

Brady wrapped the knife in bubble wrap and electrical tape and handed it to Henley, who, remaining in the secured area, went to her office. *Id*. at 126, 128. Subsequently, Henley learned that Brady was writing her up for having a knife in the secured area. *Id*. at 130-31. Henley went to discuss the matter with Brady and asked the Acting Federal Security Director if she needed to respond immediately. *Id*. at 142-45. Told no, Henley

2

went home since, by this time, her shift had ended. *Id*. at 145.

At home, she learned that Deputy Federal Security Director Paul Malandrino had placed her on administrative leave. *Id*. at 145-46. An investigation ensued and on April 1, 2003 Henley was recommended for termination, Mem. Supp. Mot. Ex. 2 at 65 (April 1, 2003 letter from John McMullen, Deputy Federal Security Director, to Fred Pope, Employee Relations Specialist), and on April 9, 2003, Henley was terminated, Henley Dep. at 242-43.

On April 1, 2003, Henley filed an informal complaint of discrimination with the TSA office of Civil Rights. Mem. Opp. Mot. Ex. 9 ¶ 2 (Affidavit of Kym Henley). On June 6, 2003, EEO Counselor Patricia Wade conducted an initial interview with Henley. Mem. Supp. Mot. Ex. 1 at 23 (EEO Counselor's Report). On August 22, 2003, Wade conducted Henley's final interview and explained her right to file a formal complaint. *Id*. at 26.

On September 9, 2003, Henley received the Notice of Final Interview and Right to File a Formal Complaint. Henley Aff. ¶ 8. This notice informed her of the 15-day time limit to file and contained a copy of the actual form. Mem. Supp. Mot. Ex. 1 at 28 (Notice of Right to File letter from Wade to Henley); Henley Aff. ¶ 8. On Sept. 12, Henley faxed her signed complaint form to her representative, Simon Banks. Henley Aff. ¶ 10. Her complaint was due to be filed on September 24, 2003. Mem. Supp. Mot. at 6.

According to Henley, she tried, unsuccessfully, to contact

Banks in mid-October, after her complaint should have been filed, to determine the status of her complaint.  Henley Aff. ¶ 11.  On Oct. 14, Henley emailed Wade to ask about her complaint; the next day, Wade responded, suggesting that Henley call to discuss the situation.  Henley Aff. ¶ 12.  On Oct. 21, upon Wade's advice, Henley emailed the head of the EEO office who, on Oct. 24, informed her that her complaint had not yet been received and that a copy needed to be submitted.  *Id*. ¶ 13-14.  Henley forwarded this email to Banks and did not check on the status of her complaint again until Nov. 19 when she learned that it had been received on Nov. 13.  *Id*. ¶ 15-16.

Henley subsequently learned that Banks was not an attorney and that he was prosecuted for obtaining money by false pretenses and for practicing law without a license.  *Id*. ¶ 5.

In response to her complaint, an investigator conducted interviews, compiled affidavits and issued a detailed report.  Mem. Supp. Mot. at 7.  On February 11, 2005, the Agency filed a motion to dismiss the complaint based on its untimely filing; this motion was denied on Feb. 23.  Mem. Supp. Mot. Ex. 5 (Mot. to Dismiss); Ex. 8 (Mot. for Reconsideration).  On March 3, the Agency filed a motion for reconsideration and on Nov. 4 a final decision was issued dismissing Henley's complaint for failure to comply with the applicable time limits.  Mem. Supp. Mot. Ex. 11 at 3 (Final Decision by Department of Homeland Security).

4

Henley timely filed her complaint with this Court on February 3, 2006.

## II.  Analysis

### A.  Standard of Review

Under Rule 12(b)(6), a motion to dismiss should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)), *Mylan Laboratories, Inc. v. Raj Matkari, et al.*, 7 F.3d 1130, 1134 (4th Cir. 1993).  All allegations are treated as true, and the complaint is viewed in the light most favorable to the plaintiff.  *Mylan*, 7 F.3d at 1134.

In deciding a Rule 12(b)(6) motion, the Court will consider the facts stated in the complaint and any attached documents. *Biospherics, Inc., v. Forbes, Inc.*, 989 F.Supp. 748, 749 (D. Md. 1997) *aff'd* 151 F.3d 180 (4th Cir. 1998).  The Court may also consider documents referred to in the complaint and relied upon by the plaintiff in bringing the action.  *Id.*

### B.  Equitable Tolling

It is clear that a federal employee must exhaust his or her administrative remedies before bringing a Title VII complaint for employment discrimination in federal court.  *Blount v. Shalala*,

32 F.Supp.2d 339, 341 (D. Md. 1999), *aff'd*, 199 F.3d 1326 (1999).
First, an employee must bring her situation to the attention of
the agency's Equal Opportunity Employment Counselor.  *Id*.  Within
15 calendar days of the final interview with the counselor and
receipt of written notice, the employee must file a formal
administrative complaint with the EEO Counselor.  *Id*.; 29 C.F.R.
§ 1614.106(b); 29 C.F.R. § 1614.107(a)(2).

Here it is undisputed that Henley filed her administrative
complaint on November 13, 2003, 50 days beyond the 15-day filing
deadline.  This Court has found that an "employee's failure to
timely file an administrative complaint within 15 days after the
final interview constitutes grounds for dismissal."  *Blount*, 32
F.Supp.2d at 341.

Henley argues that TSA should be equitably estopped from
asserting a timeliness defense.  The deadline provisions of Title
VII are subject to equitable estoppel.  *Id*. (citing *Irwin v.
Dept. of Vet. Affairs*, 498 U.S. 89 (1990)).  Equitable tolling,
however, "must be guarded and infrequent, lest circumstances of
individualized hardship supplant the rules of clearly drafted
statutes."  *Gayle v. United Parcel Service, Inc*., 401 F.3d 222,
226 (4th Cir. 2005) (quoting *Harris v. Hutchinson*, 209 F.3d 325,
330 (4th Cir. 2000)).

Equitable tolling has been allowed "'where the claimant has
actively pursued his judicial remedies by filing a defective

6

pleading during' the limitations period." *Gayle*, 401 F.3d at 226
(quoting *Irwin*, 498 U.S. at 96).  It has also been allowed when
"the defendant engaged in affirmative misconduct intended to
mislead or deceive [the complainant] into missing the deadline."
*Blount*, 32 F.Supp.2d at 341 (citing *Nealon v. Stone*, 958 F.2d 584
589 (4th Cir. 1992)).

Here, the evidence clearly indicates that Henley did not
file within the limitations period--her complaint was not
defective and was ultimately received 50 days after the deadline.
Moreover, the record fails to suggest any bad faith on the part
of TSA.  There is no evidence that TSA caused Henley to miss the
deadline; in fact the final notice Henley received informed her
of the 15-day period.

Instead Henley argues that she failed to file a timely
complaint because she relied on her representative who turned out
not to be an attorney.  But a representative designated by a
complainant in an EEO matter need not be an attorney.  29 C.F.R.
§ 1614.605(a).  Moreover, Henley, not her representative, is
ultimately responsible for pursuing her claim whether or not she
had designated a representative.  29 C.F.R. § 1614.605(e).

The facts suggest that Henley first asked Banks about her
claim in mid-October, about two weeks after the September 24
deadline of which she had notice.  Despite knowledge of the 15-
day period, when she found out on Oct. 24 that her complaint had

7

not been received, she simply emailed Banks again and did not check on the status of her complaint until Nov. 19.

That Henley discovered that Banks was not an attorney and has been prosecuted subsequently does not relieve her from responsibility to pursue her claim.  Banks did not need to be an attorney, and there is no evidence that Banks acted with anything other than negligence while acting as Henley's representative--he simply turned in her complaint late.  As this Court would not relieve her of her counsel's negligent failure to follow procedure; it will not relieve her of her representative's similar negligence.  *See Gayle*, 401 F.3d at 226-27; *see also Irwin*, 498 U.S. at 96 ("the principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect").  As a result, Henley is not entitled to equitable estoppel.

## III. Conclusion

For the reasons stated above, the motion to dismiss filed by DHS will be granted.

December 19, 2006                    _____/s/_____
Date                                William D. Quarles, Jr.
                                    United States District Judge